**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| KARREEM JONES, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | CASE NO. 5:11-CV-174-MTT-MSH |
| | : | 28 U.S.C. § 2254 |
| Warden GLEN JOHNSON, | : | |
| | : | |
| Respondent. | : | |

_____

## REPORT AND RECOMMENDATION

Presently pending before the Court is Respondent's Motion to Dismiss Plaintiff's

petition for habeas relief as untimely.  (ECF No. 9.)  Petitioner filed a response to the

motion on September 29, 2011, claiming that his petition was timely filed or,

alternatively, that he is entitled to equitable tolling.  (ECF No. 13.)  For the reasons

described below, Respondent's motion should be granted and Petitioner's application for

a writ of habeas corpus pursuant to 28 U.S.C. § 2254 should be dismissed as untimely.

## BACKGROUND

On December 7, 2006, in the Superior Court of Bibb County, Petitioner Karreem

Jones was found guilty of armed robbery.  (Pet. for Writ of Habeas Corpus 1, ECF No.

1.)  Petitioner was sentenced twenty years.  (*Id*.)  Petitioner appealed his conviction and

sentence to the Georgia Court of Appeals (*Id.* at 2), which affirmed his conviction on

June 18, 2008. *Jones v. State*, No. A08A0636, slip op. at 1 (Ga. Ct. App. June 18, 2008).

Petitioner did not seek further review by the Georgia Supreme Court.  (Pet. for Writ of

Habeas Corpus 2.)

Petitioner moved for state habeas relief in the Hancock County Superior Court. (Pet. for Writ of Habeas Corpus 3.)  Petitioner's application for state habeas relief is stamped as filed by the Hancock County Clerk on July 24, 2009.  (Resp't's Ex. 3, ECF No. 10-3.)  The state court denied Petitioner's request for habeas relief on November 3, 2010.  (Pet. for Writ of Habeas Corpus 3.)  Petitioner filed an application for probable cause to appeal with the Georgia Supreme Court which was denied on April 26, 2011. (Pet. for Writ of Habeas Corpus 6.)  This petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 was filed by Petitioner on May 6, 2011.  (Pet. for Writ of Habeas Corpus 15.)

## DISCUSSION

### I.       The AEDPA limitations period

The Anti-Terrorism and Effective Death Penalty Act (hereinafter "AEDPA") was enacted primarily to put an end to the unacceptable delay in the review of prisoners' habeas petitions.  "The purpose of the AEDPA is not obscure.  It was to eliminate the interminable delays in the execution of state and federal criminal sentences, and the . . . overloading of our federal criminal justice system, produced by various aspects of this Court's habeas corpus jurisdiction." *Hohn v. United States,* 524 U.S. 236, 264-65 (1998). The AEDPA, which became effective on April 24, 1996, therefore instituted a time bar as follows:

> (1)    A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.

. . .

(2)     The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).  Under the statute, the limitations period begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  Thus, in order to determine whether a petition was timely filed, the Court "must determine (1) when the [collateral] motion was filed and (2) when [the] judgment of conviction became final." *McCloud v. Hooks*, 560 F.3d 1223, 1227 (11th Cir. 2009) (internal quotation marks and citation omitted) (alterations in original).

## II.     Petitioner's Application is outside the AEDPA one-year limitations period

### A.     Date when Petitioner's judgment of conviction became final

Petitioner was convicted and sentenced on December 7, 2006.  (Pet. for Writ of Habeas Corpus 1.)  Petitioner appealed his conviction and sentence to the Georgia Court of Appeals.  (*Id.* at 2.)  His conviction was affirmed by the Georgia Court of Appeals on June 18, 2008.  *Jones v. State*, No. A08A0636, slip op. at 1 (Ga. Ct. Apps. June 18, 2008).  Petitioner thereafter had ten days within which to file a notification of intention to seek a writ of certiorari to the Georgia Supreme Court.  Ga. S. Ct. R. 38.

Since Petitioner did not seek review by the Georgia Supreme Court, his conviction became final on June 30, 2008.[1]  28 U.S.C. § 2244(d)(1)(A) (A judgment of conviction is

---

[1]   June 28, 2008, was a Saturday.  Petitioner therefore had until the following Monday, June 30,

final at "the conclusion of direct review or the expiration of the time for seeking such review.")   Petitioner's AEDPA limitations period therefore began to run on June 30, 2008.   28 U.S.C. § 2244(d)(1)(A).   Without some tolling, Petitioner had until June 30, 2009, within which to file his federal application for habeas relief.

> B.     The AEDPA limitations period was not tolled during pendency of Petitioner's state habeas filing

Pursuant to 28 U.S.C. § 2244(d)(2), "[t]he time during which a properly filed application for State post-conviction . . . review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under the [AEDPA]."   However, in order for the AEDPA one-year limitation to be tolled while the state habeas petition is pending, the application for state habeas relief must be filed before the AEDPA limitations period has expired.  *See Webster v. Moore*, 199 F.3d 1256, 1299 (11th Cir. 2000) (explaining that "[a] state court petition . . . that is filed following the expiration of the limitations period cannot toll [the AEDPA] period because there is no period remaining to be tolled").   Consequently, in order for Petitioner's state habeas action to have tolled the AEDPA limitations period, it must have been filed on or before June 30, 2009.

Petitioner claims that his state habeas action was constructively filed on Monday, June 29, 2009.  (Am. Pet. for Writ of Habeas Corpus 5-6, ECF No. 7.)  The state habeas petition was not stamped as filed by the Hancock County Clerk's Office until July 24, 2009.  If Petitioner is correct that his application for state relief was filed on June 29,

---

2008, to file his notification of intention to file a petition for certiorari.

2009, his AEDPA limitations period would have been tolled during the pendency of the state habeas action.  If, however, the state habeas action was not filed until July 24, 2009, as is urged by the Respondent in this case, then Petitioner's AEDPA limitations period had expired and his federal application for habeas relief is untimely.

Petitioner claims that his state application for habeas relief was constructively filed on June 29, 2009, because that is the date that the petition was received by the Hancock County Clerk's Office.  (Am. Pet. for Writ of Habeas Corpus 5-6; *Id.* at Exs. A-5, A-6; O'Connor Decl. ¶ 12, July 8, 2011, ECF No. 7-1.)  The documents sent to the Hancock County Superior Court included a Petition for a Writ of Habeas Corpus created by Petitioner's attorney, the standard Georgia Form HC-1 Application for Writ of Habeas Corpus,[2] and an Affidavit of indigency created and signed by Petitioner's attorney.  (Am. Pet. for Writ of Habeas Corpus Ex. A-4; O'Connor Decl. ¶ 8.)  Petitioner did not provide the Hancock County Superior Court with a filing fee or Georgia Form HC-2 which is a request to proceed in forma pauperis and inmate account certification.  (Am. Pet. for Writ of Habeas Corpus 6.)

Petitioner (1) argues that Form HC-2 is unnecessary in this case because the state habeas action was filed by an attorney, and (2) blames the failure to provide a HC-2 on Hancock State Prison.  (Am. Pet. for Writ of Habeas Corpus 6; O'Connor Decl. ¶¶ 7, 10, 12.)   Initially, the Court rejects Petitioner's assertion that Hancock State Prison is

---

[2]  Georgia Forms HC-1 and HC-2 are drafted by the Administrative Office of the Courts of Georgia and are mandated for use in habeas cases by O.C.G.A. § 9-10-14.  Copies of the forms, along with the instructions for the proper use of the forms, are attached hereto as Attachments 1 and 2.  The forms are available at:
http://www.georgiacourts.org/index.php?option=com_content&view=article&id=73&Itemid=0.

somehow to blame for his failure to include Form HC-2 along with the documents sent to the Hancock County Superior Court on June 29, 2009.  It is Petitioner's and Petitioner's attorney's responsibility to ensure that an action is timely filed on the proper forms. Petitioner's attorney did not speak to anyone at Hancock State Prison until June 25, 2009 to attempt to have the Forms HC-1 and HC-2 completed by Petitioner.  A prison is under no obligation to ensure that an inmate completes and timely mails any forms.

Second, the Court finds that it was necessary for Petitioner to include a Form HC-2 along with his application for state habeas relief in order for the clerk to accept it for filing.  "[A]n application is properly filed when its delivery and acceptance are in compliance with the applicable laws and rules governing filings."  *Spottsville v. Terry*, 476 F.3d 1241, 1244 (11th Cir. 2007) (alteration in original) (internal quotation marks and citation omitted).  While in Georgia a paper is typically deemed to be filed "when it is delivered to the proper officer, and by [that officer] received, to be kept on file," *Hood v. State*, 282 Ga. 462, 464, 651 S.E.2d 88, 90 (Ga. 2007), filings by inmates against the state and local governments are controlled by O.C.G.A. § 9-10-14.  O.C.G.A. § 9-10-14(a) provides that the Administrative Office of the Courts of Georgia shall "promulgate . . . a form or forms for use by inmates of state and local penal and correctional institutions in actions against the state and local governments and government agencies and officers." Section (b) of O.C.G.A. § 9-10-14 further states that

> [n]o clerk of any court shall accept for filing any action by an inmate of a
> state or local penal or correctional institution against the state or a local
> government or against any agency or officer of state or local government
> unless the complaint or other initial pleading is on a form or forms
> promulgated by the Administrative Office of the Courts. . . .  If the pleading

is accompanied by an affidavit of indigency, the clerk shall not accept the pleading for filing unless the pleading is also accompanied by a certification from the institution wherein the inmate is incarcerated that the financial statement correctly states the amount of funds in any and all custodial accounts of the inmate with the institution.

(emphasis added).

Petitioner argues, without citation to authority, that O.C.G.A. § 9-10-14 and the forms created therefrom—HC-1 and HC-2—are "*pro se* litigant forms designed to facilitate the processing of claims by a non-lawyer."  (Am. Pet. for Writ of Habeas Corpus 6.)  Thus, he contends, when an application for habeas relief is filed by an attorney, Forms HC-1 and HC-2 are unnecessary, O.C.G.A. § 9-10-14(b) is inapplicable, and the papers should be filed on the date that they are received by the clerk.  (*Id.*)  This argument is unavailing and is contrary to the plain language of the statute.

The Georgia Supreme Court has explained that the language in O.C.G.A. § 9-10-14(b) is "unambiguous[,] does not provide for any exceptions" and is "mandatory." *Donald v. Price*, 283 Ga. 311, 311-12, 658 S.E.2d 569, 570-71 (Ga. 2008).  The statute explicitly prohibits a clerk from accepting "any action by an inmate" if that action is not on the proper forms.  O.C.G.A. § 9-10-14(b).  Furthermore, the clerk is prohibited from accepting the action for filing if "the pleading is accompanied by an affidavit of indigency" but is not "also accompanied by a certification from the institution wherein the inmate is incarcerated that the financial statement correctly states the amount of funds in any and all custodial accounts of the inmate with the institution."  *Id.*  In other words, if a petitioner is moving to proceed in forma pauperis in a state habeas action, he must provide Form HC-2.

There is no reason that the Court should read into the statute the words "*pro se*," as urged by Petitioner, such that O.C.G.A. § 9-10-14 would only apply to *pro se* actions filed by inmates.  To the contrary, "where the language of a statute is plain and unambiguous, judicial construction is not only unnecessary but forbidden."  *Brown v. State*, -- S.E.2d --, 2012 WL 335723 at *2 (Ga. App. Feb. 3, 2012).  The Court therefore will not and cannot interpret the statute to say anything other than that the Administrative Office forms must be used in "any action by an inmate" and, if the petitioner is moving in forma pauperis, a financial certification from the prison must be provided or the clerk cannot accept the papers for filing.  O.C.G.A. § 9-10-14(b).

Petitioner's argument is also belied by the forms themselves.  HC-1 provides on page 7 for a signature and address of a petitioner's attorney.  (Attach. 1 at 7.)  Thus, Form HC-1 contemplates a petitioner having an attorney but still using the Form as required by O.C.G.A. § 9-10-14.  Petitioner and his attorney were aware of this fact because Petitioner provided to the Hancock County Superior Court an HC-1 signed by Petitioner's attorney.  (Am. Pet. for Writ of Habeas Corpus Ex. A-4.)  It is nonsensical to assume that O.C.G.A. § 9-10-14 requires the use of HC-1 for all inmate filings, but the use of HC-2 for only *pro se* filings.

As the plain language of O.C.G.A. § 9-10-14 makes clear, Petitioner had to provide HC-2 prior to the clerk accepting Petitioner's application for state habeas relief for filing.  Consequently, Petitioner's application for state habeas relief was not filed until July 24, 2009, when the clerk received Petitioner's request to proceed in forma pauperis and inmate account certification.  (Resp't's Ex. 3; O'Connor Decl. ¶ 19.)  Petitioner's

state application for habeas relief was therefore filed after the AEDPA limitations period expired on June 30, 2009, and cannot toll the statute of limitations for this federal habeas action. *Webster*, 199 F.3d at 1299. Petitioner's federal application for habeas relief, filed May 6, 2011, almost two years after the expiration of the limitations period, fails to invoke the jurisdiction of this Court. Petitioner's application for habeas relief is therefore untimely and Respondent's motion to dismiss should be granted.

> C.    Assuming Petitioner's state habeas petition was filed within the AEDPA limitations period, Petitioner's federal application for habeas relief is still untimely

Assuming Petitioner's state habeas petition was filed within the one-year AEDPA limitations period, it is still untimely. Petitioner contends that his state habeas petition tolled the AEDPA limitations period from June 29, 2009, through May 6, 2011. (*See* Am. Pet. for Writ of Habeas Corpus 1.) Since Petitioner filed his federal application for habeas relief on May 6, 2011, he contends that his federal petition was timely. (Pet. for Writ of Habeas Corpus 15.) This is incorrect.

As explained above, "[t]he time during which a properly filed application for State post-conviction . . . review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under the [AEDPA]." 28 U.S.C. § 2244(d)(2). For this portion of the Report and Recommendation, the Court assumes that Petitioner's state habeas action was filed on June 29, 2009, thus tolling the AEDPA statute of limitations with one day remaining. The final order in the state habeas action was handed down on November 3, 2010. (Pet. for Writ of Habeas Corpus 3.) Petitioner filed an application for a certificate of probable cause to appeal on November 30, 2010,

which was denied by the Georgia Supreme Court on April 26, 2011.  (*Id.* at 6.)

Petitioner's state habeas action therefore concluded on April 26, 2011, and the AEDPA statute of limitations began running again on that date.  *Martin v. McNeil*, 633 F.3d 1257, 1266 (11th Cir. 2011) ("The AEDPA clock resumes running when the state's highest court issues its mandate disposing of the motion for post-conviction relief.".).  Since Petitioner had one day remaining in the AEDPA limitations period, he had until April 27, 2011, to timely file his federal application for habeas relief.  Petitioner waited until May 6, 2011, nine days too late, to file this action.  Petitioner has not provided argument as to why he believes that he had until May 6, 2011, to file this action, but the Court speculates that he assumed the AEDPA limitations period was tolled during the ten-day motion for reconsideration period after the denial of an application for certificate of probable cause.  Unfortunately for Petitioner, this assumption was incorrect.  The AEDPA limitations period is not tolled "during the ten-day period in which [a petitioner] could have moved for reconsideration of the [certificate of probable cause] denial."  *Hall v. Humphrey*, 155 F. App'x 441, 444 (11th Cir. 2005) (citation omitted).  Thus, even assuming that Petitioner's state habeas action was timely filed, his federal petition for habeas relief was untimely filed nine days after the AEDPA limitations period expired.  Respondent's motion to dismiss Petitioner's federal application for a writ of habeas corpus should be granted.

D.     Petitioner is not entitled to equitable tolling

Petitioner alternatively argues that he should be entitled to equitable tolling.  Specifically, Petitioner contends that the AEDPA limitations period should be equitably

tolled for the following reasons: (1) "his trial lawyer's deceptive and evasive actions from July 2008 up to the filing . . . significantly delayed the investigation and litigation of [Petitioner's] federal constitutional deprivations;" (2) "much of the evidence to support independent claims of error only became known to [Petitioner] and his current counsel a couple months before, and in some instances after, the petition was filed;" and (3) "the prison officials were duplicitous in their assurances of cooperation and actively interfered and precluded a timely filing."  Petitioner's arguments are unavailing, and he is not entitled to equitable tolling.

"A petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. --, 130 S. Ct. 2549, 2562 (2010).  "The burden of proving circumstances that justify the application of the equitable tolling doctrine rests squarely on the petitioner." *Martin*, 633 F.3d at 1268.  "Mere conclusory allegations are insufficient to raise the issue of equitable tolling." *Id.* Furthermore, "an attorney's negligence, for example, miscalculating a filing deadline, does not provide a basis for tolling a statutory time limit." *Maples v. Thomas*, -- U.S. --, 2012 WL 125438, * 11 (Jan. 18, 2012).

Petitioner's allegations are simply assertions that multiple other parties are to blame for his current attorney's failure to timely file his federal petition for habeas relief. Initially, Petitioner contends that his trial attorney's "lack of cooperation . . . significantly delayed [his current attorney's] preparation of the state habeas petition."  (Am. Pet. for Writ of Habeas Corpus 8.)  Petitioner, however, admits that at most the actions of his trial

attorney "effectively reduced [his] habeas preparation period from one year to less than four months." (*Id.*) A mere reduction in preparation time is not an "extraordinary circumstance" which would entitle a petitioner to equitable tolling.

Petitioner next blames the public defender, prosecutor, and Bibb County Sheriff's Department for the untimely filing of his federal application for habeas relief. He claims that the failure of these parties to provide his current attorney with 911 and dispatch audio tapes within the one-year AEDPA limitations period through "acts of subterfuge" is an extraordinary circumstance that entitles him to equitable tolling. Petitioner, however, has failed to provide any evidence that the prosecutor or law enforcement engaged in any subterfuge which prohibited him from timely filing his federal application for habeas relief. Petitioner's mere conjecture that these parties were keeping exculpatory evidence from him does not establish an extraordinary circumstance which would have prevented him from timely filing the state or federal applications. Furthermore, a petitioner must "show a causal connection between [an] alleged extraordinary circumstance[] and the late filing of the petition." *Martin*, 633 F.3d at 1267. Even if these actions could be considered extraordinary circumstances, they would not have prevented the petitioner from timely filing the state petition for writ of habeas corpus in order to preserve his right to file a federal habeas action and later amending his state action.

Finally, Petitioner blames Hancock State Prison for failing to timely file the state petition. Petitioner claims that he was "induced or tricked by the prison's false assurances into allowing the filing deadline to pass." (Am. Pet. for Writ of Habeas Corpus 10.) Petitioner initially insinuates that Petitioner's transfer from another prison to

12

Hancock State Prison just a few weeks before the state petition should have been filed was an extraordinary circumstance which delayed Petitioner's filing. (*Id.*) Petitioner then argues that the prison was responsible for failing to timely provide and mail the proper forms for the state habeas petition. (*Id.*)

As explained *supra*, a prison is not responsible for ensuring that a prisoner completes and mails forms in a timely manner. Petitioner has not shown that he was tricked or induced into allowing the filing deadline to pass. Petitioner's attorney was well aware of the filing deadline and failed to take reasonable steps to make certain that the deadline would have been met. For example, Petitioner's attorney could have made a personal visit to the prison, acquired the required forms, and personally delivered them to Hancock County Superior Court. Had she done this, she may have been able to correct any deficiencies prior to the expiration of the limitations period. Petitioner's attorney fails to accept any responsibility for the late filing of Petitioner's state or federal habeas action, despite admitted knowledge of the filing deadline and despite being told by a clerk at the Hancock County Superior Court that she must use the Forms HC-1 and HC-2. (O'Connor Decl. ¶ 5.) Regardless, her negligence in failing to timely file the state or federal application for habeas relief is not an extraordinary circumstance that would entitle Petitioner to equitable tolling. *See, e.g., Maples*, 2012 WL 125438 at * 11.

Petitioner has failed to meet the burden of showing that his AEDPA limitations period should be tolled. There are no extraordinary circumstances in this case which were beyond the Petitioner's control which would entitle to equitable tolling. Petitioner's federal application for habeas relief is consequently untimely and Respondent's motion to

13

dismiss should be granted.

### III.    Certificate of Appealability

Rule 11(a) of Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue only if the applicant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies a habeas petition on procedural grounds without reaching the merits of the petitioner's application for habeas relief, this standard requires a petitioner to demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *See Slack v. McDaniel*, 529 U.S. 473, 478 (2000). Petitioner cannot meet this standard and, therefore, a certificate of appealability in this case should be denied.

### CONCLUSION

For the reasons described above, Respondent's Motion to Dismiss should be granted and Petitioner's action should be dismissed as untimely. Since Petitioner cannot meet the requisite standard, a certificate of appealability should be denied. Pursuant to 28 U.S.C. § 636(b)(1), the Petitioner may serve and file written objections to this recommendation with the UNITED STATES DISTRICT JUDGE within fourteen (14) days after being served a copy of this recommendation.

SO RECOMMENDED, this 27th day of February, 2012.

15

S/Stephen Hyles
UNITED STATES MAGISTRATE JUDGE