IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

KARREEM JONES,                        :
                                      :
            Petitioner,               :
                                      :
v.                                    :        CASE NO. 5:11-CV-174-MTT-MSH
                                      :                28 U.S.C. § 2254
Warden GLEN JOHNSON,                  :
                                      :
            Respondent.               :
_____

**ORDER AND**
**REPORT AND RECOMMENDATION**

On June 6, 2014, the Court held an evidentiary hearing on the issue of the timeliness of Petitioner's application for habeas relief. Specifically, the Court sought to determine through the hearing whether Petitioner is entitled to equitable tolling in this case. After benefit of the evidentiary hearing and considering the parties' pleadings concerning the issue, the Court has determined that Petitioner is not entitled to equitable tolling. Consequently, it is recommended that Petitioner's application for habeas relief be dismissed.

**BACKGROUND[1]**

On December 7, 2006, in the Superior Court of Bibb County, Petitioner Karreem Jones was found guilty of armed robbery. (Pet. for Writ of Habeas Corpus 1, ECF No. 1.) Petitioner was sentenced twenty years. (*Id*.) Petitioner appealed his conviction and

_____

[1] An extensive background is necessary to understand the lapses in attorney diligence that have occurred in this case.

sentence to the Georgia Court of Appeals (*Id.* at 2), which affirmed his conviction on June 18, 2008.  *Jones v. State*, No. A08A0636, slip op. at 1 (Ga. Ct. Apps. June 18, 2008).  Petitioner did not seek further review by the Georgia Supreme Court.  (Pet. for Writ of Habeas Corpus 2.)

Petitioner moved for state habeas relief in the Hancock County Superior Court. (Pet. for Writ of Habeas Corpus 3.)  Petitioner's application for state habeas relief is stamped as filed by the Hancock County Clerk on July 24, 2009.  (Resp't's Ex. 3, ECF No. 10-3.)  The state court denied Petitioner's request for habeas relief on November 3, 2010.  (Pet. for Writ of Habeas Corpus 3.)  Petitioner filed an application for probable cause to appeal with the Georgia Supreme Court which was denied on April 26, 2011. (Pet. for Writ of Habeas Corpus 6.)  This petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 was filed by Petitioner on May 6, 2011.  (Pet. for Writ of Habeas Corpus 15.)

Respondent filed a motion to dismiss Petitioner's application for habeas relief as untimely on August 12, 2011.  (ECF No. 9.)  Petitioner did not respond to the motion to dismiss despite being represented by counsel.  Consequently, on September 21, 2011, the Court ordered Petitioner to respond to the motion to dismiss.  (ECF No. 12.)  Petitioner responded to the motion to dismiss and asserted that his application for habeas relief was timely filed and that if it was not timely filed he is entitled to equitable tolling.  (ECF No. 13.)  Respondent failed to file a reply and address the issue of equitable tolling.  On February 27, 2012, the undersigned issued a Report and Recommendation wherein it was recommended that Respondent's motion to dismiss be granted because Petitioner's

application for federal habeas relief was not timely filed and because Petitioner was not entitled to equitable tolling. (ECF No. 16.) Petitioner objected to the Report and Recommendation. (ECF No. 17.)

On March 30, 2012, the district judge adopted in part the Report and Recommendation. (Order, Mar. 30, 2012, ECF No. 18.) Specifically, the district judge found that "Petitioner's application for state habeas relief was not filed until July 24, 2009[,]" and "[t]hus, unless the Petitioner is entitled to equitable tolling, his state petition cannot toll the AEDPA limitations period." (Order 3, Mar. 30, 2012.) The district judge then explained that from the record as then existed in the case, the Court could not determine whether Petitioner was entitled to equitable tolling. (*Id.* at 4-10.) The district judge denied Respondent's motion to dismiss because he found the issue of equitable tolling to be "determinative of whether Petitioner's federal habeas petition was timely filed[.]" (*Id.* at 10.)

After the filing of the March 30, 2012 Order, the parties filed nothing in the case until February 19, 2013. On that date, Petitioner asked for a status conference or briefing schedule to be filed in the case. (ECF No. 20.) The Court granted the motion and set a status conference for March 19, 2013 in Columbus, Georgia. (Text-only Order, Feb. 26, 2013.) The parties then moved for a briefing schedule to be filed and to vacate the scheduled status conference. (ECF No. 21.) On March 4, 2013, the Court granted this motion and gave Respondent thirty days within which to file a brief and the record in the case. Petitioner was given thirty days to respond. (Text-only Order, Mar. 4, 2013.) On April 3, 2013, Respondent filed a response to the application for habeas relief, along with

the record in the case, but still did not address the issue of equitable tolling. (ECF Nos. 23-25.) Petitioner moved for an extension of time to file a reply (ECF No. 26), which was granted. Petitioner was given until May 24, 2013 in which to file a reply to Respondent's Answer-Response. (Text-only Order, Apr. 29, 2013.)

Despite the extension of thirty days to respond, Petitioner waited until May 28, 2013 to file his reply and motion for an evidentiary hearing on the merits of the case. (ECF Nos. 28-29.) His memorandum in support of his reply was not filed until May 29, 2013. (ECF No. 30.) The Court consequently ordered Petitioner to file a motion to file his submissions out of time (Text-only Order, May 29, 2013), which he did on May 29, 2013 (ECF No. 31). Petitioner's motion was granted on June 13, 2013. (Text-only Order, June 13, 2013.) Respondents filed a response to Petitioner's motion for an evidentiary hearing on the merits on June 25, 2013. (ECF No. 33.) The issue of equitable tolling was not addressed in these filings.

On October 31, 2013, the Court had its first in a set of telephonic status conferences to address the current issues and pending motions in the case. At that conference, the Court expressed its concern that the issue of equitable tolling needs to be addressed before the merits of the pending application for habeas relief given the district judge's March 30, 2012 Order which found the application to be untimely filed. Respondent thereafter filed a motion to amend his Answer-Response in this case to address the issue of equitable tolling. (ECF No. 35.) Additionally, Respondent filed additional exhibits for the record which address Petitioner's contentions regarding equitable tolling. (ECF No. 38.)

Petitioner opposes these motions claiming that Respondent "unequivocally with[drew] his previously filed claim of untimeliness" in his response filed after the March 30, 2012 Order.  (Pet.'s Opp'n to Leave to File Second Am. Answer ¶ 8, ECF No. 39.)  Petitioner further asserts that the "timeliness issue was litigated and resolved against Respondent over eighteen months ago" (*Id.* ¶ 12.), and that the Court should not "turn back the hands of time to relitigate an issue already [] decided against [Respondent]." (*Id.* ¶ 11.)  Finally, Petitioner contends that Respondent's amendment should not be allowed "given the undue delay, dilatory motives as evidenced by repeated failure to timely file responsive pleadings, undue prejudice to the opposing party by virtue of allowance of the amendment, and the futility of [the] amendment."  (*Id.* ¶ 13.)

Petitioner thereafter moved alternatively for an evidentiary hearing on the issue of equitable tolling.  (ECF No. 40.)  The Court granted Petitioner's request for a hearing solely on the issue of equitable tolling, which was set for March 25, 2014, and directed the parties to file supplemental briefs at least seven days prior to the hearing.  Petitioner requested that the hearing be set at a later date and that Petitioner be given more time in which to file his brief.  (ECF No. 45.)  This motion was granted on March 11, 2014 by text-only order.  In that Order, the hearing was reset for June 6, 2014, and the parties were directed to file their supplemental briefing by May 5, 2014.  (Text-only Order, Mar. 11, 2014.)

Again despite being given additional time, as of May 21, 2014, neither party had filed his supplemental briefing.  Consequently, the Court directed the Petitioner to file his supplemental briefing by May 23, 2014, and gave Respondent until May 30, 2014 within

which to respond.  (Text-only Order, May 21, 2014.)   The parties complied with the deadlines provided in the May 21 Order and the evidentiary hearing on the issue of equitable tolling was held on June 6, 2014.

## DISCUSSION

### I.   Motions to Amend the Answer and Expand the Record

Currently pending are Respondent's motion to amend his answer to address the issue of equitable tolling (ECF No. 35) and motion for leave to expand the record (ECF No. 38) to include factual evidence regarding the issue of equitable tolling.  Petitioner opposes these motions as explained above.  His objections rest on his arguments that: (1) Respondent has "unequivocally" withdrawn the claim of untimeliness; (2) this issue was previously litigated and decided against Respondent; and (3) allowing the filing creates undue delay and prejudice to Petitioner.  (*See* Mem. in Supp. of Pet'r's Opp'n to Leave to File a Second Am. Answer 3, 5-13, ECF No. 39-1.)   Petitioner blames Respondent for taking "no action" between March 30, 2012 and February 19, 2013, which he claims "allowed the case to become dormant" and is an example of undue delay and dilatory motives.  (*Id.* at 3, 10-13.)

The Court assumes that this motion is brought pursuant to Federal Rules of Civil Procedure Rule 15(a)(2)[2] which provides that leave to amend pleadings should be "freely given . . . when justice so requires."   Respondent's original Answer-Response asserted that Petitioner's application for habeas relief was untimely filed.  (Answer-Response ¶ 1,

---

[2] Rule 12 of the Rules Governing Section 2254 Cases in the United States District Courts states that "[t]he Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules."

ECF No. 8.)  Respondent's Amended Answer-Response withdrew this defense based on the incorrect belief that "the Court has resolved [the issue of timeliness] and deemed the petition timely."  (Am. Answer-Response ¶ 2, ECF No. 23.)  To the contrary, the Court found that "Petitioner's application for state habeas relief was not filed until July 24, 2009[,]" and "[t]hus, unless the Petitioner is entitled to equitable tolling, his state petition cannot toll the AEDPA limitations period."  (Order 3, Mar. 30, 2012.)  In the Second Amended Answer-Response, Respondent again asserts that the application for habeas relief was untimely filed.  (Second Am. Answer-Response ¶ 2, ECF No. 36.)

Respondent's motions to amend and to expand the record are granted.  Petitioner's arguments are meritless.  First, Respondent never waived the timeliness defense.  Instead, Respondent mistakenly believed that the issue of timeliness had been resolved and that the Court had deemed the petition timely.  (Am. Answer-Response ¶ 2.)  Such a misunderstanding cannot be deemed to be an "intentional relinquishment or abandonment of a known right" which constitutes waiver.  *United States v. Olano*, 507 U.S. 725, 733 (1993) (internal quotation marks and citation omitted).  At most, Respondent forfeited the timeliness defense.  The United States Supreme Court has previously upheld a district court's decision to address the AEDPA limitations period when the state mistakenly forfeited the timeliness defense.  *Day v. McDonough*, 547 U.S. 198, 209-10 (2006).  In *Day*, the Court also discussed the fact that the magistrate judge could have allowed the state to amend its answer to assert a timeliness defense such that the magistrate judge would not have had to address the issue *sua sponte*.  *Id.* at 209.  Likewise, the Supreme Court has upheld a circuit court's authority "to raise a forfeited timeliness defense on

their own initiative." *Wood v. Milyard*, 132 S. Ct. 1826, 1834 (2012).   Even if Respondent had forfeited his timeliness defense, which the Court specifically declines to find, such forfeiture would not prohibit the Court from addressing the issue *sua sponte* or from allowing Respondent to amend his answer to discuss timeliness.

Second, the issue of timeliness was not previously litigated and determined against Respondent.  The district judge explicitly found equitable tolling to be "determinative" of the issue of timeliness, but that the Court could not decide whether the Petitioner was entitled to equitable tolling based on the record as it stood before the Court.  (Order 4-10, Mar. 30, 2012.)  While the district judge did deny Respondent's motion to dismiss, that fact alone does not mean that the timeliness issue was resolved.  To the contrary, the issue of equitable tolling, and therefore timeliness, was expressly left unresolved by the district judge's previous order.[3]

Finally, Petitioner argues that an amendment to the answer would cause him undue delay and prejudice.  This argument is equally unavailing.  In *Day*, the Court noted that a court "must assure itself that the petitioner is not significantly prejudiced by the delayed focus on the limitation issue, and determine whether the interests of justice would be better served by addressing the merits or by dismissing the petition as time barred."  *Day*, 547 U.S. at 210 (internal quotation marks and citation omitted).  However, in this case we do not have a delayed focus on the limitations issue.  Respondent here has

---

[3] In fact, the district judge prompted this issue to be resolved at a later date: "Whether or not the Petitioner is in fact entitled to equitable tolling can only be answered when the Respondent addresses that issue, presumably when it moves for summary judgment based on an appropriate record."  (Order 7, Mar. 30, 2012.)

contested the timeliness of Petitioner's application for habeas relief from his initial response.   Petitioner's delay argument instead concerns the period between March 30, 2012 and February 19, 2013 during which Petitioner claims the Respondent "allowed the case to become dormant."   (Pet.'s Opp'n to Leave to File Second Am. Answer ¶ 6.) Petitioner, however, also took no action on this case between March 30, 2012 and February 19, 2013.   Furthermore, Petitioner has repeatedly asked for extensions of time and failed to meet deadlines requiring the Court to grant additional time to have issues be fully briefed.   Petitioner's own actions in this case have caused great delay.   There is no prejudice to Petitioner to have the equitable tolling issue addressed as was directed in the Court's previous Order.   Also, the Court finds that it is in the interest of justice to address this issue prior to addressing the merits of this case.   Consequently, Respondent's motions to amend and to expand the record are granted.

## II.    Equitable Tolling

As was previously found by this Court, Petitioner's conviction became final for purposes of the AEDPA limitations period on June 30, 2008.  (Order 2, Mar. 30, 2012.) "Thus, without some tolling, the Petitioner had until June 30, 2009, to file his federal habeas petition."  (*Id.*)  The district judge then found that the state application for habeas relief was not filed until July 24, 2009, and consequently, "unless the Petitioner is entitled to equitable tolling, his state habeas petition cannot toll the AEDPA limitations period." (*Id.* at 3.)

Petitioner argues for equitable tolling based on what he characterizes as occurrences outside of his or his attorney's control—the Hancock County Clerk Office's

refusal to file Petitioner's application for habeas relief without the appropriate forms and the prison official's failure to timely send the appropriate forms to Hancock County.[4] Petitioner explains that the state application for habeas relief was ready to be filed on June 16, 2009 in Telfair County, but that Petitioner was moved to Hancock County. It is this transfer from Telfair County to Hancock County that Petitioner claims constitutes extraordinary circumstances such that Petitioner is entitled to equitable tolling.[5]

The Court held an evidentiary hearing regarding the issue of equitable tolling on June 6, 2014. Based on the evidence presented at that hearing and the evidence in the record, the Court makes the following proposed findings of fact and conclusions of law:

A.   Findings of Fact

1.

Petitioner's mother retained current counsel—Ms. Deirdre O'Connor—to represent Petitioner in his habeas proceedings in late July 2008. (Evidentiary Hr'g Tr. 72:24-73:3, June 6, 2014, ECF No. 49.)

2.

Petitioner's counsel spent the time between July 2008 and June 2009 investigating information needed for Petitioner's state application for habeas relief. (*See generally* Evidentiary Hr'g Tr. 35:11-55:19.) Petitioner's counsel claims that she intended to file

---

[4] Petitioner also previously argued for equitable tolling based on delayed preparation time due to difficulties during counsel's investigation. The district judge rejected this argument in his March 30, 2012 Order, and the Court does not address such here.

[5] Petitioner does not contend that Petitioner was purposefully transferred in order to prevent a timely habeas filing. (Evidentiary Hr'g Tr. 123:1-7.)

such application for habeas relief in Telfair County on or around June 18, 2009.  (*Id.* at 50:19-23.)

3.

Telfair County has, in the past, accepted for filing some state applications for habeas relief that are not on the standard Georgia Forms HC-1 and HC-2.  (*Id.* at 12:2-14:16.)  Georgia Form HC-1 is the standard Georgia Application for Writ of Habeas Corpus.  HC-2 is the standard form request to proceed *in forma pauperis* and inmate account certification.  These forms are drafted by the Administrative Office of the Courts of Georgia and are mandated for use in cases filed by inmates by O.C.G.A. § 9-10-14.[6]

4.

Between January 1, 2013 and June 5, 2014, and after getting approval by the habeas judge in Telfair County, the Clerk of Court for Telfair County accepted for filing one application for habeas relief not on the standard forms.  (Evidentiary Hr'g Tr. 28:4-30:10.)  It is unclear from the record how many habeas filings may have been accepted

_____

[6] O.C.G.A. § 9-10-14(b) states:

> No clerk of any court shall accept for filing any action by an inmate of a state or local penal or correctional institution against the state or a local government or against any agency or officer of state or local government unless the complaint or other initial pleading is on a form or forms promulgated by the Administrative Office of the Courts and such form or forms are appropriately and legibly completed. Any inmate filing such an action may submit with the complaint or other initial pleading any additional matter in any form if the pleading includes the form or forms required by this Code section. If the pleading is accompanied by an affidavit of indigency, the clerk shall not accept the pleading for filing unless the pleading is also accompanied by a certification from the institution wherein the inmate is incarcerated that the financial statement correctly states the amount of funds in any and all custodial accounts of the inmate with the institution.

by Telfair County in 2009 which were not on the standard HC-1 and HC-2 forms. (*Id.* at 13-27.)

5.

Petitioner's counsel was finalizing his state application for habeas relief on June 16, 2009. (O'Connor Decl. ¶4.) However, as of June 18, 2009, this application for habeas relief was not on form HC-1 and Petitioner had not completed an HC-2 application to proceed *in forma pauperis* or account certification. (*See* O'Connor Decl. ¶¶ 5-6, July 8, 2011, ECF No. 7-1.)

6.

On or around June 16, 2009, Petitioner was transferred from Telfair County to Hancock State Prison in Hancock County. (O'Connor Decl. ¶ 4; Evidentiary Hr'g Tr. 10:13-18.) Petitioner's counsel was notified of this transfer sometime between June 16, 2009 and June 18, 2009. (O'Connor Decl. ¶ 4; Evidentiary Hr'g Tr. 10:2-11:5.)

7.

Petitioner's counsel contacted the Hancock County Clerk's Office after discovering that Petitioner had been transferred to Hancock County in order to find out the proper address for filing. (O'Connor Decl. ¶ 5; Evidentiary Hr'g Tr. 56:10-13.) During that conversation, Petitioner's counsel discovered that Hancock County requires the submission of habeas petitions on the standard HC-1 form and applications to proceed *in forma pauperis* along with an account certification on the standard HC-2 form. (Evidentiary Hr'g Tr. 56:14-17.) Petitioner's counsel also learned that the HC-1 and HC-2 forms require the inmate's signature. (*Id.* at 56:18-20.) This conversation occurred

12

"within a day or so" of Plaintiff's transfer to Hancock State Prison.  (*Id.* at 56:25-57:4.)

8.

Petitioner's counsel then contacted Hancock State Prison to set up a phone call with Petitioner.  Hancock State Prison stated that the first date Petitioner would be able to contact counsel on the phone was June 25, 2009.  (O'Connor Decl. ¶ 6; Evidentiary Hr'g Tr. 57:5-19.)

9.

Counsel again contacted Hancock State Prison on June 25 via phone and fax. (O'Connor Decl. ¶ 6; Evidentiary Hr'g Tr. 76:13-22.)  Petitioner's counsel spoke to the Deputy Warden of Care and Treatment at Hancock State Prison, Ms. Jo Hunding.  (*Id.*) Counsel faxed Ms. Hunding a copy of a completed HC-1 petition for writ of habeas corpus and asked Ms. Hunding to get Petitioner to sign the form and return it to her by June 26, 2009.  (Am. Pet. for Writ of Habeas Corpus Ex. A-2, ECF No. 7-2; O'Connor Decl. ¶¶ 6-7; Evidentiary Hr'g Tr. 76:13-19.)  Petitioner's counsel also requested that Ms. Hunding have Petitioner complete a HC-2 *in forma pauperis* form and account certification, but did not fax completed copies of those forms to Ms. Hunding.  (Am. Pet. for Writ of Habeas Corpus Ex. A-2.)

10.

On June 26, 2009, Ms. Hunding faxed back to Petitioner's counsel a copy of the signed HC-1 application for writ of habeas corpus, but did not fax a completed HC-2 or inmate account certification.  (Am. Pet. for Writ of Habeas Corpus Ex. A-3.)  In other words, Ms. Hunding had Petitioner sign the only document provided to her by counsel

13

and promptly faxed that document back to Petitioner's counsel.  (Am. Pet. for Writ of

Habeas Corpus Ex. A-3; Evidentiary Hr'g Tr. 85:17-86:5.)  Although Petitioner's counsel

requested in the original fax that Ms. Hunding provide a HC-2 motion to proceed *in

forma pauperis* and account certification form to Petitioner and have him complete them,

those documents were not faxed back to counsel.  (Am. Pet. for Writ of Habeas Corpus

Exs. A-2, A-3; Evidentiary Hr'g Tr. 85:17-86:12.)

11.

Petitioner's counsel avers that because she did not receive the completed HC-2

forms, she again telephoned Ms. Hunding on June 26, 2009.  (O'Connor Decl. ¶ 7.)  It is

unclear from the record what transpired in that telephone conversation.  Petitioner's

counsel states that Ms. Hunding agreed to have Petitioner fill out the HC-2 form and

account certification and have those documents sent directly to Hancock County Superior

Court on Monday, June 29, 2009.  (*Id.*)  Ms. Hunding testified that she faxed back any

forms requested to be faxed by Petitioner's counsel, but that any forms that would need to

be mailed would have to be sent through the prison mail at the inmate's expense.

(Evidentiary Hr'g Tr. 85:1-8, 86:6-24.)

12.

Although she did not have a completed HC-2 form or account certification,

Petitioner's counsel mailed Petitioner's state application for habeas relief on June 27,

2009.  (O'Connor Decl. ¶ 8, Am. Pet. for Writ of Habeas Corpus Exs. A-5, A-6, ECF

Nos. 7-5, 7-6.)  Included with the application for habeas relief was an affidavit to proceed

*in forma pauperis* not on the standard form and signed only by Petitioner's counsel.

14

(Am. Pet. for Writ of Habeas Corpus Ex. A-4.)  The United States Postal Service Track and Confirm receipt shows that this package was delivered to Hancock County's post office box on June 29, 2009.  (Am. Pet. for Writ of Habeas Corpus Ex. A-6.)

13.

Petitioner's counsel states that she called Ms. Hunding on June 29, 2009 to confirm that the HC-2 application to proceed *in forma pauperis* and account certification were completed and would be sent out that day.  (O'Connor Decl. ¶ 10.)  Additionally, counsel contacted the Hancock County Clerk's Office to confirm receipt of the state application for habeas relief.  (*Id.*)  The clerk's office was unable to give confirmation of receipt at that time.  (*Id.*)

14.

Counsel states that she again called the clerk's office on June 30, 2009, but no one answered the phone.  (O'Connor Decl. ¶ 11.)

15.

On July 2, 2009, counsel reached the Hancock County Clerk's Office and was told that they had received her package containing Petitioner's application for habeas relief. However, they had not received the HC-2 form and account certification.  (*Id.* ¶ 12.) Counsel then spoke to Ms. Hunding again who stated that she gave the forms to Petitioner for mailing.  (*Id.*)

16.

Counsel then spoke to the Petitioner who said that he received the signed HC-2

form and account certification on Wednesday, July 1, 2009.  (O'Connor Decl. ¶ 12.)[7]
Attached to the signed forms was a post-it note which states: "Copy to Mr. Leroy Wiley
Clerk of Superior Court Hancock Co.  Get address from law library[.]"  (*Id.*; *see also*
Pet'r's Opp'n to Mot. to Dismiss Ex. 2, ECF No. 15-2.)  Petitioner told his counsel that
he retrieved the address from the law library and mailed the HC-2 forms to the clerk.
(O'Connor Decl. ¶ 12.)

17.

On July 14, 2009, Petitioner's counsel spoke to someone in the Hancock County
Clerk's Office who explained that the office had received some financial forms from
Petitioner, but that there was an error in the documents such that they could not be filed.
The clerk stated that they were keeping the application for habeas relief, but would not
file stamp it.  (O'Connor Decl. ¶ 13.)

18.

That same day counsel again contacted Petitioner and directed him to mail a set of
HC-2 forms and account statement to Hancock County.  (*Id.* ¶ 14.)  Counsel also
attempted to contact Ms. Hunding, but was unable to reach her until July 16, 2009, at
which time Ms. Hunding said she would try to determine if there is a delay with the
financial paperwork.  (*Id.* ¶¶ 14-15.)  During testimony, Ms. Hunding could not verify the
content of her follow-up conversations with Ms. O'Connor.  (Evidentiary Hr'g Tr. 78:19-

---

[7] The Court recognizes that it is citing to Ms. O'Connor's declaration for testimony which is
clear hearsay.  However, Petitioner's counsel failed to submit any evidence or testimony from
the Petitioner himself or from anyone from the Hancock County Clerk's Office.  Giving
Petitioner the benefit of the doubt, the Court is considering all of the evidence submitted as a
whole to determine whether Petitioner is entitled to equitable tolling.

79:17.)

19.

On July 24, 2009, Petitioner's counsel went to the Hancock County Clerk's Office.  (O'Connor Decl. ¶ 19.)  The clerk told her that they had received the HC-2 application to proceed *in forma pauperis* and account certification that morning.  (*Id.*)

20.

Petitioner's state application for habeas relief, along with forms HC-1 and HC-2, were filed in Hancock County on July 24, 2009.  The filed HC-1 form is the same form as was faxed to Petitioner's counsel by Ms. Hunding on June 26, 2009 because it contains the same fax markers at the top of the document.  (Am. Pet. for Writ of Habeas Corpus Ex. A-8 at 9-11, ECF No. 7-8.)  This document is signed by Petitioner's counsel on June 25, 2009.  (*Id.*)  The HC-2 form that was file stamped by the Hancock County Clerk's office is signed by the Petitioner on July 16, 2009.  (*Id.* at 12-13.)  The account certification form is signed by an officer at Hancock State Prison on July 15, 2009.  (*Id.* at 14.)  Petitioner's account statement, a copy of which is required to be attached to the account certification form, was printed on June 29, 2009.  (*Id.* at 15.)  Although not file stamped by the Hancock County Clerk's Office, there is also in the record an account certification signed by an officer at Hancock State Prison dated June 29, 2009.  (ECF No. 15-3.)

21.

During the relevant time period above, Petitioner's counsel was never denied

17

physical access to her client.[8]   (Evidentiary Hr'g Tr. 62:16-19.)   Additionally, counsel was aware of the AEDPA limitations period during her preparation for the state habeas petition.  (Evidentiary Hr'g Tr. 64:9-17.)

B.      Conclusions of Law

In *Holland v. Florida*, 560 U.S. 631 (2010), the United States Supreme Court held that the AEDPA limitations period is subject to equitable tolling.   560 U.S. at 645.  However, equitable tolling requires the petitioner show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."   *Id*. at 649 (quotation marks omitted).  As to the first prong, the Court stated that only "reasonable diligence . . . not maximum feasible diligence" is required.   *Id*. at 653.  As to the second prong, the Court held that typically "a petitioner must bear the risk of attorney error," but this is subject to some limits where the attorney's "professional misconduct" could "amount to egregious behavior and create an extraordinary circumstance that warrants equitable tolling."   *Id*. at 650-51.  However, "a garden variety claim of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline, does not warrant equitable tolling."   *Id*. at 651-52 (internal quotation marks and citations omitted).

In *Maples v. Thomas*, -- U.S. --, 132 S. Ct. 912 (2012), decided only eighteen months later, the Supreme Court discussed the *Holland* decision and noted that the

---

[8] Although not entirely clear from her testimony, it also appears that Petitioner's mother, who was in touch with counsel and had assisted counsel with her preparation of Petitioner's state application for habeas relief, was not asked to go to Hancock State Prison or otherwise attempt to have the state forms filled out by Petitioner in person.  (Evidentiary Hr'g Tr. 73:25-74:9.)

holding was based, in part, on a distinction between "attorney error, however egregious, and a claim that an attorney had essentially abandoned his client."  132 S. Ct. at 923.  The Court reaffirmed that "when a petitioner's postconviction attorney misses a filing deadline, the petitioner is bound by the oversight and cannot rely on it to establish cause." *Id.* at 922.  However, "under agency principles, a client cannot be charged with the acts or omissions of an attorney who has abandoned him.  Nor can a client be faulted for failing to act on his own behalf when he lacks reason to believe his attorneys . . . are not representing him." *Id*. at 924.

The Eleventh Circuit later discussed the effect of the *Maples* decision on the "extraordinary circumstance" question in *Cadet v. Fla. Dep't of Corr.*, 742 F.3d 473 (11th Cir. 2014).  The court there, citing *Maples*, found that "attorney negligence, however gross or egregious, does not qualify as an extraordinary circumstance for purposes of equitable tolling; abandonment of the attorney-client relationship, such as may have occurred in *Holland*, is required." *Id*. at 481 (internal quotation marks and citation omitted).  The court found that the inquiry should be whether, under traditional agency principles, a petitioner's attorney has abandoned him such that he should not be charged with the acts or omissions of his attorney.  "Abandonment, which *Maples* made the standard, denotes absolute renunciation or withdrawal, or a complete rejection or desertion of one's responsibilities, a walking away from a relationship." *Id*. at 484.  In so finding, the Court specifically noted Justice Alito's concurrence in *Holland* that "an attorney's miscalculation of the filing deadline, inadvertent failure to file a § 2254 petition on time, or failure 'to do the requisite research to determine the applicable

deadline' are all the types of errors that are 'constructively attributable to the client.'" *Cadet*, 742 F.3d at 485 (quoting *Holland*, 560 U.S. at 657).

Petitioner has failed to establish that he is entitled to equitable tolling. *See Hutchinson v. Florida*, 677 F.3d 1097, 1099 (11th Cir. 2012) ("A petitioner has the burden of establishing his right . . . to equitable tolling."). All of Petitioner's evidence shows that his counsel, despite being aware of the AEDPA limitations period, failed to timely file his state application for habeas relief. Counsel discovered on or around June 18, 2009, that Petitioner had been moved to a county that required compliance with O.C.G.A. § 9-10-14. In fact, counsel admits that she was told by the Hancock County Clerk's Office that they would not accept for filing a habeas petition or application to proceed *in forma pauperis* that was not on the appropriate state forms—HC-1 and HC-2—and that was not signed by the inmate. Petitioner's state application for habeas relief was already prepared prior to his transfer. Counsel thus had from Petitioner's transfer until June 30, 2009 in order to submit the appropriate forms to Hancock County Superior Court.

However, counsel waited until June 25, 2009 to attempt to organize with Hancock State Prison, by phone, to have Petitioner sign the required forms. Hancock State Prison promptly had Petitioner sign the one document provided to the Prison and faxed that document back to counsel on June 26, 2009. When counsel did not receive by fax the other required documents, she mailed the state application for habeas relief, knowing it

was defective, but expected it to be accepted for filing.[9]   Counsel contacted Hancock State Prison again and states that she was given a promise that the HC-2 forms and account certification would go into the mail on Monday, June 29, 2009, the day before the AEDPA deadline on June 30, 2009.  Counsel then did not confirm on June 30 that the clerk's office had received the appropriate forms and that Petitioner's application was filed.

Despite the obvious failure on this part of his counsel, Petitioner argues that this is not a case of attorney negligence.[10]   Instead he contends that the "specific factual circumstances of this case warrant equitable tolling."  (Pet'r's Suppl. Br. on Equitable Tolling 3-6, ECF No. 46.)  Petitioner points to the move from Telfair County, where habeas petitions and IFP applications on attorney-created forms have been accepted for filing in the past, as an extraordinary circumstance such that Petitioner is entitled to equitable tolling.  (Evidentiary Hr'g Tr. 122:12-25.)  Petitioner further argues that the totality of the circumstances surrounding the move from Telfair State Prison to Hancock State Prison, and the resulting difficulties in obtaining signatures on the HC-1 and HC-2 forms long-distance urge for the flexible standard of equitable tolling to be applied. (Pet'r's Suppl. Br. on Equitable Tolling 3-4.)

The Court disagrees.  The move from Telfair County to Hancock County certainly

---

[9] The obvious solution to Petitioner's problem would have been for his retained counsel to have paid the filing fee.  Counsel had the properly executed HC-1 application for habeas relief when she sent in the forms and lacked only the signed application to proceed *in forma pauperis* and account certification.

[10] To the contrary, Petitioner's counsel argues that she has diligently represented Petitioner and has not abandoned him, and that abandonment has "never been part of [their equitable tolling] claim."  (Evidentiary Hr'g Tr. 61:5-12.)

inconvenienced Petitioner and his counsel, but it cannot be said based on the evidence in this case that it was an extraordinary circumstance that *prevented* the timely filing of Petitioner's state application for habeas relief.[11]   Furthermore, while equitable tolling is an equitable principle and should be applied on a case-by-case basis, it should not be applied in such a way that disregards binding precedent.   In *Hutchinson v. Florida*, the Eleventh Circuit discussed *Holland* and explained:

> The Supreme Court did say in *Holland* that although equitable relief is flexible and all the facts and circumstances must be considered, we should "draw upon decisions made in other similar cases for guidance."  *Holland*, 560 U.S. at 650.  We take that statement to mean this is not an area free of rules of law, governed entirely by the chancellor's foot, but we are instead bound by precedent to the extent that there is precedent.

677 F.3d at 1099.  All of the binding precedent to address the issue has stated that a simple attorney error or mistake "that leads a lawyer to miss a filing deadline does not warrant equitable tolling."  *Holland*, 560 U.S. at 651-52 (internal citation omitted); *see also Maples*, 132 S. Ct. at 922 ("[W]hen a petitioner's postconviction attorney misses a filing deadline, the petitioner is bound by the oversight and cannot rely on it to establish cause."); *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) ("Attorney ignorance or inadvertence is not cause [for excusing a procedural default based on a filing deadline] because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must bear the risk of attorney error." (internal quotation marks and citations omitted)); *Cadet*, 742 F.3d at 481 ("[A]ttorney negligence, however gross or egregious, does not qualify as an 'extraordinary circumstance' for

---

[11] Counsel admits that the transfer was not done in an effort to preclude the timely filing of the state application for habeas relief.  (Evidentiary Hr'g Tr. 123:1-7.)

purposes of equitable tolling[.]");." *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1071 (11th Cir. 2011) ("In virtually every case where the issue of equitable tolling comes up one or more attorneys should have acted with more dispatch, but more than that is required.")  The Court is not persuaded by counsel's attempts to blame either the Hancock County Clerk's Office or Hancock State Prison for failing to file the state application for habeas relief within the AEDPA limitations period.  Consequently, Petitioner is not entitled to equitable tolling and it is recommended that Petitioner's application for habeas relief be dismissed as untimely filed.

## III.  Certificate of Appealability

Rule 11(a) of Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A certificate of appealability may issue only if the applicant makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a court denies a habeas petition on procedural grounds without reaching the merits of the petitioner's application for habeas relief, this standard requires a petitioner to demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *See Slack v. McDaniel*, 529 U.S. 473, 478 (2000).  Petitioner cannot meet this standard and, therefore, a certificate of appealability in this case should be denied.

**CONCLUSION**

For the reasons described above, Respondent's motions (ECF Nos. 35, 38) are granted.   Additionally, it is recommended that Petitioner's action be dismissed as untimely.   Since Petitioner cannot meet the requisite standard, a certificate of appealability should be denied.   Pursuant to 28 U.S.C. § 636(b)(1), the Petitioner may serve and file written objections to this recommendation with the United States District Judge within fourteen (14) days after being served a copy of this recommendation.

SO ORDERED and RECOMMENDED, this 12th day of August, 2014.

S/Stephen Hyles_____
UNITED STATES MAGISTRATE JUDGE
